Filed 3/23/16  P. v. Lopez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ISAAC LOPEZ,<br><br>    Defendant and Appellant. | D069645<br><br><br>(Super. Ct. No. INF10002071) |

APPEAL from a judgment of the Superior Court of Riverside County, Richard A. Erwood, Judge.  Affirmed.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted David Lopez of second degree murder. After the verdict, Lopez moved for a new trial, alleging juror misconduct during deliberations. Lopez appeals the trial court's denial of his new trial motion, arguing the court erred in declining to hold an evidentiary hearing. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 8, 2014, a jury convicted Lopez of second degree murder for shooting and killing Matthew Roberts during a failed gun transaction. (Pen. Code, § 187.)[1] The jury found true the allegation Lopez had discharged a firearm causing death to a person other than an accomplice. (§ 12022.53, subd. (d).) At trial, the jury heard testimony from a witness to events before, during, and after the murder. Police recovered a buried gun determined to have discharged the bullet found near Roberts' body; a magazine recovered with the gun contained Lopez's DNA.

Following the verdict, Lopez filed a motion for a new trial, alleging juror misconduct during deliberations. The motion contained no sworn affidavits but attached a report by a private investigator. The report indicated that between December 4 and 8, 2014, while deliberations were taking place, Juror 12's wife (F.H.) communicated through text and social media messages with her cousin (E.S.), while E.S. was with Lopez's girlfriend, C.Z. The report included statements allegedly made by E.S., F.H., and Juror 12 to the investigator after the verdict.

_____

1    Further statutory references are to the Penal Code, unless otherwise specified.

2

The People opposed Lopez's new trial motion, arguing the investigator's report contained multiple levels of hearsay and did not satisfy Lopez's threshold burden to show a "strong possibility" of prejudicial juror misconduct to warrant an evidentiary hearing. The People argued Lopez's motion was based on alleged communications between E.S. and F.H., two nonjurors, which at most suggested Juror 12 told his wife about the case, not that there was a strong possibility of prejudicial juror misconduct.

In reply, Lopez argued obtaining sworn declarations from F.H. and E.S. was not feasible and that concerns about hearsay could be addressed at an evidentiary hearing. Lopez argued statements in the investigator's report provided powerful circumstantial evidence of prejudicial juror misconduct. Attached to Lopez's reply brief was an undated, electronically signed declaration by the private investigator repeating the statements allegedly made by E.S., F.H., and Juror 12 to the investigator. Among other things, the declaration stated E.S. told the investigator that F.H. told E.S. during deliberations that Lopez should be convicted because he was "a tweaker and gang involved."[2]

The trial court denied Lopez's new trial motion. The court found that statements attributed to E.S., even if assumed to be true, were inconsistent and lacked credibility. Finding it significant that Juror 12's name never came up during E.S. and F.H.'s purported exchange, the court held Lopez failed to overcome his threshold burden to warrant an evidentiary hearing. As to F.H.'s alleged statement to E.S. that Lopez was a "tweaker and

---

[2]     To avoid repetition, we include relevant facts from the investigator's declaration in the discussion section.

gang involved," the court found that anyone walking into the courtroom could have concluded the murder was the result of a drug transaction gone poorly, given evidence at trial that Lopez demanded drugs and money from Roberts in exchange for the gun.

The court also denied Lopez's request to reduce the verdict to voluntary manslaughter, finding sufficient credible evidence to support the verdict. The court sentenced Lopez to a consecutive term of 15 years in state prison for the second degree murder conviction (§ 187), 25 years to life for the sentencing enhancement (§ 12022.53), and two years for prior convictions (§ 667.5, subd. (b)). Lopez appealed.

## DISCUSSION

Lopez raises one issue on appeal. He argues the trial court committed reversible error by denying Lopez's new trial motion without holding an evidentiary hearing. As we explain, Lopez failed to meet his threshold burden to show a "strong possibility" of prejudicial juror misconduct, and the trial court did not abuse its discretion in denying an evidentiary hearing.

### I. *Background*

Lopez's new trial motion rested on a string of alleged communications between Juror 12's wife, F.H., and her cousin, E.S. Lopez submitted a report and declaration from a defense investigator, who spoke to E.S., F.H., and Juror 12 after the verdict. E.S., F.H., and Juror 12 did not submit declarations or affidavits of their own. The investigator's declaration described the investigator's alleged communications with E.S., F.H., and Juror 12 as follows.

4

E.S. told the investigator that when deliberations began on December 4, 2014, she posted a message on social media stating she was waiting in the courtroom with her cousin for the jury to finish deliberations. F.H. replied to the message and asked which cousin E.S. was referring to; E.S. stated she was with C.Z., who is Lopez's girlfriend. (C.Z. is E.S.'s cousin, but F.H. and C.Z. are not related.) F.H. asked if they were waiting for the Lopez verdict. E.S. said she was, and F.H. replied that she and a friend were jurors on the case. F.H. said: "Between you and I, I think he is guilty because he is a tweaker and gang involved."[3] E.S. replied that Lopez was innocent and guilty would be the wrong verdict. F.H. told E.S. there were three jurors who believed Lopez was not guilty who kept asking for more papers, and this was why it was taking so long to reach a verdict. E.S. told F.H. she should decide based on the evidence, not based on her personal beliefs.

The investigator called F.H. to ask about her participation as a juror in the Lopez trial. F.H. told the investigator *her husband* was a juror in that case and gave him Juror 12's contact information.

The investigator asked E.S. if F.H. might have told her she *knew* a juror on that case. E.S. said F.H. may have said that, but she recalled F.H. saying both she *and* a friend were jurors. The investigator asked for the name of F.H.'s husband and asked if F.H. had mentioned Juror 12 knowing anything about the Lopez trial. E.S. said Juror 12's name "didn't come up at all." E.S. then recalled that F.H. did say her friend was a juror

---

3      The briefs define a "tweaker" as a heavy methamphetamine user.

5

on the Lopez case and that the friend told F.H. three jurors thought Lopez was not guilty. E.S. said F.H.'s friend "was a girl for sure" and may have been a neighbor.

The investigator then spoke to Juror 12, who confirmed being a juror. Juror 12 stated he did not feel pressured to reach a verdict and felt there was enough time to review the evidence. While a couple of jurors wanted to convict Lopez of the greater charge of first degree murder, Juror 12 said no juror thought Lopez was not guilty, and manslaughter was not a consideration. Juror 12 did not discuss the case with another juror during trial. The investigator asked if he discussed the case with anyone during deliberations, and Juror 12 replied: "Don't know why, I talked to my wife after the trial." The investigator asked if Juror 12 would be surprised if his wife had spoken about jury deliberations. He laughed "nervously" and stated, "Wife wouldn't have a reason to. I wasn't talking about it."

The investigator then spoke to F.H. F.H. stated she learned that E.S. knew someone connected to Lopez through E.S.'s social media post. When asked, F.H. "quickly and adamantly" denied having told E.S. that three jurors thought Lopez was not guilty. She stated she had not told her husband she spoke with E.S. about the trial or Lopez. F.H. said E.S. told her that it was the prosecution's witness who shot the victim, not Lopez. Although she denied telling E.S. anything, F.H. would not allow the investigator to see messages on her phone, stating she did not want to get into trouble and did not want her husband to get in trouble. F.H. conceded she may have told E.S. that the people involved were a bunch of drug addicts. When the investigator asked how she

6

would have known this, she paused and replied it was an assumption because "the valley is full of drug addicts."

The investigator served F.H. and E.S. with subpoenas. The following day, F.H. allegedly texted E.S. and asked if she had told anyone F.H. knew a juror on the Lopez case. F.H. asked why the case came up "out of the blue." She told E.S. it was "fucked up whatever you're doing" and stated she would delete her from social media to avoid having "drama in her life." E.S. sent a text message to the investigator two days later, stating C.Z. was harassing her and helping with the investigation was "not worth it." F.H. and E.S. did not appear in court to testify at the hearing on Lopez's new trial motion.

## II. *Legal Principles*

A criminal defendant has a constitutional right to a trial by an impartial jury. (U.S. Const., 6th & 14th Amends; Cal. Const., art. I, § 16.) An impartial jury is one in which no juror has been improperly influenced, and every juror is capable and willing to decide the case based solely on the evidence presented at trial. (*People v. Hensley* (2014) 59 Cal.4th 788, 824 (*Hensley*); *People v. Cissna* (2010) 182 Cal.App.4th 1105, 1110 (*Cissna*).) Pursuant to section 1181, subdivision (3), a court may grant a new trial in a criminal case where the jury has "been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

In evaluating a juror misconduct claim, the trial court must determine first whether prejudicial juror misconduct occurred. (*Hensley*, *supra*, 59 Cal.4th at p. 824.) "A juror's receipt or discussion of evidence not submitted at trial constitutes misconduct" and "raises a rebuttable presumption of prejudice." (*People v. Dykes* (2009) 46 Cal.4th 731,

7

809 (*Dykes*); see *People v. Nesler* (1997) 16 Cal.4th 561, 578-579.) The rebuttable presumption serves as an evidentiary aid to the defendant, given the statutory bar of evidence concerning a juror's subjective reasoning process. (*Cissna*, *supra*, 182 Cal.App.4th at p. 1116; *In re Carpenter* (1995) 9 Cal.4th 634, 652 (*Carpenter*); Evid. Code, § 1150, subd. (a).) To rebut the presumption, the prosecution must demonstrate there is no substantial likelihood that one or more jurors were biased by the misconduct. (*Hensley*, at p. 824; *Carpenter*, at p. 653.) If there is a substantial likelihood a juror was biased, the court must set aside the verdict. (*Hensley*, at p. 824.) "Regardless of how weighty the evidence may be, a defendant is entitled to 12, not 11, impartial jurors." (*Ibid.*)

The trial court has broad discretion in acting upon a defendant's new trial motion. (*Dykes*, *supra*, 46 Cal.4th at p. 809.) A defendant seeking a new trial for alleged juror misconduct must meet his or her threshold burden to present "competent evidence" supporting the claim. (*Ibid.*) "[I]t is within the discretion of a trial court to conduct an evidentiary hearing to determine the truth or falsity of allegations of jury misconduct, and to permit the parties to call jurors to testify at such a hearing. This does not mean, however, that a trial court must hold an evidentiary hearing in every instance of alleged jury misconduct. The hearing should not be used as a 'fishing expedition' to search for possible misconduct," and "the defendant is not entitled to such a hearing as a matter of right." (*People v. Hedgecock* (1990) 51 Cal.3d 395, 415, 419.) An evidentiary hearing " ' "should be held *only* when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred." ' " (*Dykes*, at pp. 809-810,

8

italics added.) " ' "Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties" evidence presents a material conflict that can only be resolved at such a hearing.' " (*Ibid.*; see *People v. Avila* (2006) 38 Cal.4th 491, 604 (*Avila*).)

"A trial court's ruling on a motion for a new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1260-1261 (*Hayes*).) On appeal, Lopez bears the burden to show the trial court abused its discretion by failing to conduct an evidentiary hearing on the issue of juror misconduct. (*Dykes*, *supra*, 46 Cal.4th at p. 809; *Avila*, *supra*, 38 Cal.4th at p. 604.) We accept the trial court's factual findings and credibility determinations if they are supported by substantial evidence but exercise independent judgment to determine whether any misconduct was prejudicial. (*Dykes*, at p. 809.)

### III. *Analysis*

The only evidence Lopez offered in support of his new trial motion was a report and declaration by a defense investigator describing his alleged communications with Juror 12, F.H., and E.S. Juror 12, F.H., and E.S. did not submit declarations or affidavits of their own. The investigator's unsworn report is not "competent evidence" of alleged juror misconduct. (*Dykes*, *supra*, 46 Cal.4th at p. 809.) The investigator's declaration is also defective because it is undated. (*Avila*, *supra*, 38 Cal.4th at p. 605.)

These deficiencies aside, the investigator's declaration merely relays hearsay statements allegedly made by E.S., F.H., and Juror 12 to the investigator. Such

9

statements do not constitute "competent evidence" of juror misconduct. (*Hayes*, *supra*, 21 Cal.4th at p. 1252 [" 'Normally, hearsay is not sufficient to trigger the court's duty to make further inquiries into a claim of juror misconduct.' "]; *Dykes*, *supra*, 46 Cal.4th at p. 810 ["ordinarily a trial court does not abuse its discretion in declining to conduct an evidentiary hearing on the issue of juror misconduct when the evidence proffered in support constitutes hearsay"]; *People v. Manibusan* (2013) 58 Cal.4th 40, 55 ["Hearsay evidence offered in support of a new trial motion that is based on alleged jury misconduct ordinarily is insufficient to establish an abuse of discretion in either denying the motion or declining to conduct an evidentiary hearing."].) Many of the statements consisted of double and triple hearsay, with E.S. telling the investigator what F.H. had told her, sometimes based on information F.H. purportedly learned from a friend on the jury. Because Lopez's new trial motion was based solely on hearsay evidence, the trial court did not abuse its discretion in declining to conduct an evidentiary hearing. (*Avila*, *supra*, 38 Cal.4th at p. 605 [no abuse of discretion in declining to hold an evidentiary hearing where defense declarations "consisted of double hearsay"].)

Lopez argues any concerns regarding hearsay could be eliminated by calling witnesses to testify at an evidentiary hearing. However, requiring testimony on the basis of unsworn hearsay statements "is tantamount to the type of 'fishing expedition' condemned [by our Supreme Court]. Either a juror is willing to come forward and, at least on a preliminary basis, sign an affidavit or not. Unless the reticence results from impermissible interference by the court or prosecutor, the reasons therefor should not be

subject to further inquiry." (*People v. Cox* (1991) 53 Cal.3d 618, 699 (*Cox*), disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)

Even if we were to assume the statements in the investigator's declaration were true, they would not meet Lopez's burden of demonstrating a " ' "strong possibility that prejudicial misconduct has occurred," ' " as required to warrant an evidentiary hearing. (*Dykes*, *supra*, 46 Cal.4th at p. 809.) Assuming the truth of all hearsay statements proffered, the most that can be inferred is that Juror 12 spoke to F.H. about the case and told her who the defendant was. The statements do not support a "strong possibility" of prejudicial juror misconduct, and it was not an abuse of discretion for the trial court to decline to hold an evidentiary hearing. (*Ibid*.)

For example, E.S. claimed F.H. told her three jurors believed Lopez was not guilty. However, there is no evidence to suggest *Juror 12* made any such statement to F.H. Indeed, the investigator's declaration suggests otherwise: Juror 12 stated no juror believed Lopez was not guilty, while E.S. stated Juror 12's name never came up and that F.H.'s friend on the jury "was a girl for sure." Moreover, F.H. denied ever having told E.S. three jurors thought Lopez was not guilty. E.S. also claimed F.H. told her Lopez should be convicted because he was a "tweaker and gang involved." F.H. admitted telling E.S. Lopez was a drug addict based on her assumption that "the valley is full of drug addicts." However, there is no indication F.H. *and Juror 12* spoke about Lopez being a "tweaker and gang involved." Moreover, the trial court concluded that any

11

person walking into the courtroom could have made the same assumption based on evidence presented at trial.[4]

None of the proffered statements implicates Juror 12. Lopez concedes as much, arguing only that "Juror No. 12 *may very well have* gone home and talked over this difficult decision with his wife" and that F.H. "*may have been* relying on statements that her husband, the juror, made to her about the jury's deliberations." Evidence that F.H. and E.S., two nonjurors, communicated about the case does not suggest a strong possibility of prejudicial juror misconduct. (See *Hayes*, *supra*, 21 Cal.4th at p. 1259 [testimony of two nonjurors who allegedly spoke to a juror "would have been irrelevant to any issue at a hearing on juror misconduct"].) Nor is there any basis to conclude Juror 12 failed to base his decision solely on the evidence presented on trial based on statements he *may have made* to a nonjuror. (See *Carpenter*, *supra*, 9 Cal.4th at p. 656 ["The juror also told nonjurors both what she knew and that she knew it was forbidden. . . . But it does not follow that she thereby failed to base her verdict solely on the evidence. Telling nonjurors what she knew could not itself have prejudiced defendant."]; *Cox*, *supra*, 53 Cal.3d at p. 698 ["no basis for concluding the jury actually considered *evidence* not received at defendant's trial"]; cf. *People v. Nesler*, *supra*,

_____

4      Lopez makes inconsistent arguments as to the import of this statement. He claims F.H. could only have learned about Lopez's alleged drug use and gang affiliation from conversations with Juror 12. He also claims such evidence was not presented at trial, implying Juror 12 relied on outside evidence to reach his verdict. Under either theory, there is no evidence linking *Juror 12* to F.H.'s statement about Lopez's alleged drug use and gang affiliation. Further, to the extent the statement is offered as proof of Juror 12's subjective reasoning process, it is inadmissible. (Evid. Code, § 1150, subd. (a).)

16 Cal.4th at pp. 583-589 [juror committed prejudicial misconduct, necessitating a new trial on the issue of sanity, when she disclosed outside evidence regarding defendant's drug use to other jurors during deliberations].) Thus, aside from the hearsay problem, Lopez did not meet his threshold burden of showing a strong possibility of juror misconduct. The trial court did not abuse its discretion when it denied Lopez's new trial motion without holding an evidentiary hearing.[5]

---

[5] Lopez argues the trial court improperly made credibility determinations based on statements contained in the defense investigator's declaration. Somewhat inconsistently, he also argues the trial court failed to adequately consider evidence corroborating E.S.'s statements and casting doubt on F.H.'s credibility. Assuming all hearsay statements in the investigator's declaration to be true, there is substantial evidence to support the trial court's finding that E.S.'s statements lacked credibility. E.S. claimed F.H. told her that *F.H. and a friend* were jurors; she later said F.H. may have said she knew someone on the jury. E.S. claimed F.H. told her three jurors believed Lopez was not guilty; F.H. denied making that statement, and Juror 12 claimed no juror believed Lopez was not guilty. E.S. claimed F.H. had a *female* friend on the jury and denied Juror 12's name came up at all; F.H. mentioned knowing only her husband, Juror 12, on the jury. In any event, the trial court credited *neither* E.S. nor F.H., stating their alleged communications were "rumors and speculation" on social media that had "no credibility with the court whatsoever." Because Lopez failed to present competent evidence supporting a strong possibility of prejudicial misconduct, the trial court did not abuse its discretion in declining to hold an evidentiary hearing.

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:


BENKE, Acting P.J.


AARON, J.